IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ROHAN PETERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:22-cv-02132-JPM-atc |
| v. ) | |
| ) | |
| INTERNATIONAL PAPER | |
| COMPANY ) | |
| ) | |
| Defendant. ) | |

ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S WITNESS, MATTHEW HUGHEY, PH.D.

Before the Court is Defendant International Paper Company's ("International Paper's" or "Defendant's") "Motion In Limine to Exclude from Trial the Testimony and Report of Plaintiff's Human Resources Expert, Matthew Hughey, Ph.D.[,]" Defendant's Memorandum in Support of their Motion to Exclude, Plaintiff Rohan Peters' ("Peters'" or "Plaintiff's") Response, and Defendant's Reply to Plaintiff's Response. (ECF Nos. 65-66, 68, 73-74; see also ECF Nos. 67, 70-72.) Defendant moves to exclude Plaintiff's proffered opinion witness, sociology professor Dr. Matthew Hughey, pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Federal Rule of Evidence Rule 702. (ECF No. 65-66.) Also before the Court is Defendant's "Renewed Motion in Limine No. 8 and Incorporated Memorandum to Exclude Any Evidence Relating to the Expert Opinion and Testimony of Plaintiff's Human Resources expert, Matthew Hughey, Ph.D." (ECF No. 91.)

I.  **BACKGROUND**

Plaintiff, an African-American Pilot, brought this action against his former employer, International Paper, "for wrongful termination and retaliation arising out of Defendant's discrimination based on his race in violation of Title VII of the Civil Rights Act of 1964." (ECF No. 1 at PageID 1.) Defendant filed a Motion for Summary Judgement on May 31, 2023. (ECF No. 46.) The Court granted summary judgement in favor of Defendant on Plaintiff's racial discrimination claims and on Plaintiff's entitlement to certain categories of damages on December 28, 2023. (ECF No. 75.) This case is set for a jury trial beginning February 20, 2023.

II. **LEGAL STANDARD**

Federal Rule of Evidence 702 allows opinion testimony to be offered by witnesses who are "qualified as [] expert[s] by knowledge, skill, experience, training, or education" if their specialized knowledge "help[s] the trier of fact to understand the evidence or determine a fact in issue," their testimony is "based on sufficient facts and data . . . the product of reliable principles and methods[,] and" they have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In Daubert, the Supreme Court established that district courts have a responsibility to serve as a "gatekeeper" in ensuring that scientific evidence be admitted only if it is both relevant and reliable. Daubert, 509 U.S. at 589. Daubert established that reliability for scientific testimony can be shown by whether 1) the theory is testable scientific knowledge that can assist the tryer of fact; 2) the theory has been subjected to peer review or publication; 3) known error rates or controlling standards for techniques were used; and 4) there is general acceptance of the test in the relevant community. Id. at 593-94. Daubert's progeny clarified that Daubert's general holding applies not only to scientific testimony, but to other testimony based on specialized knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 146 (1999). The Supreme Court emphasized in Kumho Tire that a district court's role includes ensuring that experts "employ[] in

the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," and that district courts should "consider the specific factors identified in Daubert where they are reasonable measures of the reliability of expert testimony."

The proponent of the witness seeking qualification under Rule 702 bears the burden of establishing that qualification by a preponderance of the evidence. Bourjaily v. United States, 483 U.S. 171 (1987); Fed. R. Evid. 104(a).  Courts determine the reliability of an expert's opinion through evaluation of the methodology and principles that form its basis, and determination of whether those methods and principles are reliably applied to facts in the case.  Greenwell v. Boatwright, 184 F.3d 492, 497 (6th Cir. 1999); Fed. R. Evid. 702.

District courts are not required to admit opinion evidence that is connected to existing data by only the *ipse dixit* of the expert. General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).  "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  Id. (citing Turpin v. Merrell Dow Pharmaceuticals, Inc., 959 F.2d 1349, 1360 (C.A.6), cert. denied, 506 U.S. 826, 113 S.Ct. 84, 121 L.Ed.2d 47 (1992)).

III. **ANALYSIS**

Defendant argues that Dr. Hughey's testimony "inappropriate[y] . . . substitute[s] his own opinion in place of the jury and instruct[s] the jury on which legal conclusion should be drawn[;]" that "Dr. Hughey hardly qualifies [to render an opinion] in workplace discrimination or retaliation and an in-depth review of his experience reveals he has very little experience in such issues;" and that "Dr. Hughey does not base his opinions on sufficient facts[,]" uses unreliable methodology, and fails to apply his principles and methods to the facts of this case. (ECF No. 66 at PageID 913-14.)  Defendant further argues that no sources listed on Dr. Hughey's CV relate to retaliation, that Dr. Hughey's typography errors reveal copy-and-paste analysis from prior cases without

3

meaningful application to the facts of this one, and that Dr. Hughey's comparative references to the Klu Klux Klan and high-profile incidents of police brutality are unfairly prejudicial. (Id. at PageID 917-919.)

Plaintiff counters that Defendant mischaracterizes Dr. Hughey's report and it's "final conclusion that, in his opinion, 'racial prejudice was more than likely a factor in Plaintiff['s] treatment by Defendant[.]'" (ECF No. 68 at PageID 992 (quoting ECF No. 68-1).) Plaintiff argues that Dr. Hughey's CV qualifies him to render an opinion on the subjects of "race, racism, and racial discrimination." (ECF No. 68 at PageID 995.) Plaintiff further argues, without citation to law, that "this is a fact-intensive mater with numerous complex issues that cannot be assessed by ordinary laypeople[]" without the assistance of opinion witnesses. (ECF No. 68 at PageID 1006.)

Most of Parties' materials on this issue focus on Dr. Hughey's proffered testimony on racial discrimination. Dr. Hughey's report provides historical context, analysis, and conclusions applicable to the racial discrimination claim in this case. (ECF No. 68-1.) Indeed, retaliation is only discussed as a basis for Dr. Hughey's ultimate conclusion that Plaintiff experienced racial discrimination. (See, e.g., Id. at PageID 1602.) Plaintiff's claims for racial discrimination, however, are not before the jury, having been dismissed at the summary judgment stage. (ECF No. 75.) Given the intervening grant of summary judgment, the remaining relevant opinion proffered by Dr. Hughey concerns retaliation. See Goller v. Ohio Dep't of Rehab & Corr., 285 F. App'x 250, 256 (6th Cir. 2008) (citing E.E.O.C. v. Avery Dennison Corp., 104 F.3d 858, 860 (6th Cir. 1997)) (establishing required showings for a *prima facie* case of retaliation under Title VII, which do not include proof of discrimination); Fed. R. Evid. 401 (evidence is relevant only if it has a tendency to prove a fact "of consequence to determining the action."). Dr. Hughey's fifty-

nine (59) page report mentions retaliation only four (4) times.[1] Of these, two are recitations of Plaintiff's claims, and the other two are, respectively, a section and a phrase offered in support of the conclusion as to racial discrimination. (ECF No. 68-1 at PageID 1021, 1053-56, 1602.) The four-page section titled "Racial Gaslighting and Retaliation" includes one and one-half pages of block quotes, one page summarizing the concept of gaslighting, one and one-half pages of summary of facts alleged, and the concluding sentences:

> A company wishing to avoid conflict of interest and to engage in fair, equitable, and transparent employment practices would not have a [] subject of the complaint oversee disciplinary measures over the complainant. The action likely sends a message of intimidation with the implicit meaning to drop past, and/or avoid future, complaints.

(ECF No. 68-1 at PageID 1056.)

"[A]n expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds, based on what is known." McLean v. 9880111 Ontario, Ltd., 224 F.3d 797, 800-801 (6th Cir. 2000). Here, Dr. Hughey's section on retaliation provides a single, limited conclusion on retaliation, without citations to support or analysis describing the bases, methods, or principles he applied to reach that conclusion. Dr. Hughey's summary of the facts followed by an *ipse dixit* conclusion not only creates too wide an

---

[1] For ease of reference, these mentions are as follows. On Page 9, the report states that "The Plaintiff alleges he was terminated because of his race, as well as in retaliation for filing an internal complaint of racial discrimination and for filing the EEOC charge." (ECF No. 68-1 at PageID 1021.) Page 41-44 includes the section "Racial Gaslighting and Retaliation." (Id. at PageID 1053-56.) Page 41, discussing comparative treatment, states that "The Plaintiff alleges he was terminated because of his race, as well as in retaliation for filing an internal complaint of racial discrimination and for filing an EEOC charge." On Page 50, the report concludes:

> In sum, based on the presence of the 'voodoo doll' in the office—and that it was dismissed as a 'joke'—coupled with the fact that Plaintiff's complaint about it resulted in a suggestion that he change (via anger management course), that the vague and changing benchmarks for varied 'plans' to alter Plaintiff's behavior and with special reference to his 'attitude[,]'[] the misuse and cherry-picking of the survey and its results, the assertions that Plaintiff was intimidating and/or causing others to be in fear of him, coupled with the racialized hierarchy and leadership, *the gaslighting and retaliation*, and the unequal treatment of employees and lack of anti-discrimination training in the culture and structure of Defendant[], leads me to the opinion that racial prejudice was more than likely a factor in Plaintiff['s] treatment by Defendant[][.]

(Id. at PageID 1602.)

analytical gap between the facts and his conclusion, but fails to address matters beyond the common knowledge or experience of the average layperson.  See Jones v. J.B. Hunt Transport, Inc., 2003 WL 25676127, at *3 (W.D. Tenn. July 21, 2003); see also Curtis v. Oklahoma City Public Schools Bd. of Educ., 147 F.3d 1200 (10th Cir. 1998); Wilson v. Muckala, 303 F.3d 1207, 1218-1219 (10th Cir. 2002).  As such, Dr. Hughey's testimony is not properly offered under Rule 702 and should be excluded.

IV. **CONCLUSION**

The body of Dr. Hughey's report establishes his opinion on Defendant's racial discrimination claim, which was dismissed through summary judgment. Dr. Hughey's opinion on retaliation, to the extent it exists, does not include analysis or application of any methodology.  For this reason and those discussed above, Defendant's Motion to Exclude Dr. Hughey's testimony is **GRANTED**. Defendant's Renewed Motion in Limine No. 8 is **MOOT**.

**IT IS SO ORDERED** this 6th day of February, 2024.

      /s/ Jon P. McCalla
JON PHIPPS MCCALLA
UNITED STATES DISTRICT JUDGE